**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Patricia A. Crumley,

Plaintiff,

vs.

City of St. Paul and Police Officers
Michael Bratsch and Gerald Bohlig,

Defendants.

Civil No. 00-2110 (RHK/JMM)
**MEMORANDUM OPINION AND ORDER**

---

Larry Eugene Reed, Hassan & Reed, Minneapolis, Minnesota, for Plaintiff.

Pierre N. Regnier and Joseph E. Flynn, Jardine, Logan & O'Brien, St. Paul, Minnesota, for Defendants.

---

**Introduction**

Plaintiff Patricia Crumley was arrested and charged with the crime of obstruction of justice in Ramsey County district court in connection with a traffic stop by St. Paul Police Officer Michael Bratsch. Crumley was acquitted of the offense by a jury. She thereafter brought this action, asserting a number of state and federal claims against Bratsch, the arresting officer, Sergeant Gerald Bohlig, the investigating officer, and the City of St. Paul ("the City"). Before the Court is the Defendants' Motion for Summary Judgment. For the reasons set forth below, the Court grants Defendants' Motion.

**Background**

The events culminating in Crumley's arrest occurred on the evening of September



DEC 2 1 2001
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD DEC 2 1 200
DEPUTY CLERK

14, 1998. (Trial testimony in State v. Patricia Ann Crumley on November 16 & 17, 1998 ("Trial Tr.") pp. 28-29.) That evening Bratsch was watching the parking lot adjacent to 316 North Lexington, having received information from a confidential informant that a delivery of cocaine had recently been made to the premises. (Id. at 28-29, 31-33.) While watching the scene, he observed a green Toyota Camry drive up to the premises and then leave a few minutes later. (Id. at 35-38.) He also observed that the vehicle's rear license plate light was not functioning. (Id.) At approximately 9:20 p.m., he activated the overhead lights on his squad car and pulled the Camry over. (Id. at 34.)

Bratsch approached the driver of the Camry, Marcus Bland. (Id. at 39.) He asked Bland to step out of the vehicle and follow him to the squad car, where he asked Bland to sit in the back seat. (Id. at 40-41.) He then returned to the Camry and spoke with the passenger, Harold Armstrong. (Id. at 41.)

As he was walking back to his patrol car, Bratsch observed a woman, later identified as Crumley, watching him from across the street. (Id. at 42-43; Aff. of Patricia Crumley ("Crumley Aff.") ¶ 3, p. 2.) Bratsch crossed the street and asked Crumley what she was doing. (Id.) She indicated that she was merely watching the encounter. (Id.) Bratsch asked Crumley for her name, which she provided. (Id.) He indicated that he remembered her from a previous criminal investigation and stated that he knew she was an attorney. (Id.) They continued to talk for few minutes. (Id. ¶ 3, pp. 2-3.) At the end of this conversation, Bratsch walked back to his patrol car, leaving Crumley on the

opposite side of the street. (Id. ¶ 3, p. 3.)

Crumley remained where she was for a few minutes before walking home. (Id.) She stayed at home for approximately ten to fifteen minutes before deciding to return to the traffic stop and give her business card to the two men who had been stopped by Bratsch. (Id.) Crumley was concerned that the men would not know anyone in the area because their car had unusual license plates. (Id.)

Once back in his patrol car, Bratsch ran a warrant search on both Bland and Armstrong and learned Armstrong had an outstanding warrant for a traffic violation in Anoka County. (Trial Tr. at 51-53, 55.) While Bratsch reviewed the warrant information in his car, Crumley approached Armstrong, who was still seated in the passenger seat of the Camry, and handed him her business card. (Id. at 56-57; Crumley Aff. ¶ 3, pp. 3-4.) Seeing Crumley handing something to Armstrong, Bratsch exited his patrol car, and quickly approached Crumley. (Crumley Aff. ¶ 3, p. 4.) He yelled at Crumley to "get away from [his] stop" and hit her in the chest. (Id.) Crumley yelled at Armstrong and Bland to watch what Bratsch was doing. (Id.) Bratsch hit Crumley approximately five times during this confrontation. (Id.) He then spun Crumley around and handcuffed her an led her to his squad car.[1] (Trial Tr. at 188; Crumley Aff. ¶ 3, p. 5.)

Bratsch released Bland and Armstrong and told Armstrong to take care of his

[1]Although Defendants' version of this confrontation differs materially from Crumley's, for purposes of this motion the Court accepts Crumley's version of the facts.

outstanding warrant. (Trial Tr. at 62.) He placed Crumley in the patrol car and took her to the police station. (Crumley Aff. ¶ 3, p. 5.) At the police station, another police officer removed Crumley's handcuffs and fingerprinted her. (Trial Tr. at 192.) At that time, Crumley noticed that her right wrist was bleeding where the handcuffs had been. (Id.) After being fingerprinted, another police officer reapplied the handcuffs to her arms but placed them lower so as not to aggravate her injury. (Id. at 192-93.) That individual then transported her to the Ramsey County Adult Detention Center ("Detention Center"). (Id. at 193.) At the Detention Center, Crumley was strip searched by two female deputies. (Id.)

Bratsch prepared and filed a General Report regarding his arrest of Crumley with his Watch Commander. (Trial Tr. at 96.) The report was passed on to the Records Department and given to Defendant Bohlig. (Id.) Bohlig reviewed the report and attempted to interview Crumley on September 15. (Id. at 96-97.) Crumley told Bohlig that she had nothing to say to him and that she had retained an attorney. (Crumley Aff. ¶ 3, p. 6.) Crumley was held at the Detention Center until early afternoon of the next day, September 15. (Dep. of Patricia Crumley ("Crumley Dep.") p. 141.)

Bohlig presented the report of the incident to the office of the City Attorney, which drafted the criminal complaint against Crumley charging her with obstruction of justice. (Trial Tr. at 97; Crumley Dep. at 40-43.)

On November 16 and 17, 1998, Crumley was tried on the obstruction of justice

charge in Ramsey County District Court. (Trial Tr.) The jury returned a verdict of not guilty. (Crumley Aff. ¶ 3, p. 7.)

Since the arrest, Crumley complains of a number of mental/emotional problems. She has had to request continuances in a number of cases and has taken an informal leave of absence from two organizations for which she serves on the Board of Directors. (Id. ¶ 3, pp.7-8.) She contends that she has seen a number of mental health care professionals and has been diagnosed as suffering from post-traumatic stress disorder that manifests itself in the form of flashbacks, nightmares, difficulty concentrating, sleeplessness, insecurity, and a feeling of isolation.[2] (Id.) Crumley further states that, because of this incident, she was forced to move out of St. Paul and now only goes to St. Paul when necessary for court proceedings; she feels uncomfortable in the St. Paul courtrooms and around police officers. (Id.)

Crumley brought this action under 42 U.S.C. §§ 1981, 1983, 1985, and 1988 alleging violations of her First, Fourth, Fifth, and Fourteenth Amendment rights. She also asserts a number of state law claims.[3] Defendants have moved for summary judgment as to all of the claims.

## Analysis

[2] No medical or psychological reports or diagnoses are included in the record.

[3] She asserts claims for battery, assault, false arrest, negligent infliction of emotional distress, intentional infliction of emotional distress, various state constitutional violations, and retaliation in violation of Minn. Stat. § 181.932.

## I. Standard of Decision

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In order for the moving party to prevail, it must demonstrate to the Court that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). A factual dispute is material only when its resolution affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is genuine if the evidence is such that it could cause a reasonable finder of fact to return a verdict for either party. Id. at 251-52.

In analyzing a motion for summary judgment, the district court must view all of the evidence and the inferences to be drawn therefrom in the light most favorable to the non-moving party. Id. at 250. The non-moving party may not, however, rest on the allegations or denials in the pleadings, but must set forth specific facts sufficient to raise a genuine issue of material fact for trial. Celotex, 477 U.S. at 324. Moreover, if a party cannot support an essential element of its claim or defense, summary judgment must be granted as to that claim or defense, for a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. Id. at 322-23

## II. Alleged Constitutional Violations

Counts 7 and 8 of the Complaint assert violations of the First, Fourth, Fifth, and Fourteenth Amendments. At oral argument, Plaintiff's counsel conceded that Crumley fails to state a claim under either the First or Fifth Amendment. Therefore, Plaintiff's counsel consented to a dismissal of the First and Fifth Amendment claims in Counts 7 and 8.

The essence of Crumley's claims is that Defendants violated her constitutional rights by unlawfully arresting her and using excessive force. Neither claim implicates the Fourteenth Amendment. All claims alleging that a police officer used excessive force in the course of a "seizure" are properly analyzed under the Fourth Amendment's "reasonableness" standard, rather than under the Fourteenth Amendment's substantive due process standard. Graham v. Connor, 490 U.S. 386, 394-95 (1989). Accordingly, the Fourteenth Amendment claim is also dismissed and the Court holds that the Fourth Amendment is the only constitutional right allegedly infringed by the Defendants' actions.

## III. Qualified Immunity

Bratsch moves to have Counts 7 and 8 dismissed on the grounds of qualified immunity. Count 7 alleges that Bratsch violated 42 U.S.C. §§ 1981, 1983, 1985, and 1988 by using excessive force in arresting Crumley on the night in question. Count 8 alleges that Bratsch illegally arrested and detained Crumley in violation of her federal constitutional rights. Bratsch contends that, considering the circumstances, he was

reasonable in using force to arrest and detain Crumley and is therefore protected by qualified immunity.

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The privilege is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Id. As a question of law, qualified immunity should be resolved by the Court before trial. Hunter v. Bryant, 502 U.S. 224, 227-28 (1991) (per curiam).

Qualified immunity attempts to strike a balance between compensating those who have been injured by official conduct and protecting the government's ability to perform its traditional functions.

> When government officials abuse their offices, "action[s] for damages may offer the only realistic avenue for vindication of constitutional guarantees." On the other hand, permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties.

Anderson v. Creighton, 483 U.S. 635, 635 (1986) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 814 (1982)). To accommodate "these conflicting concerns," government officials, performing discretionary functions, are generally provided with qualified immunity. Id. Discretionary functions require the decision maker to use judgment in deciding what course of action to take. Harlow, 457 U.S. at 816. Such functions are contrasted with ministerial tasks that do not require such judgment.

Qualified immunity protects government officials, including police officers, against liability in civil actions unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow, 457 U.S. at 818. The threshold question for the Court is whether Crumley has alleged facts sufficient to "show [that] the officer's conduct violated a constitutional right." Saucier v. Katz, 121 S. Ct. 2151, 2156 (2001). If a constitutional right was violated, "the next, sequential step is to ask whether the right was clearly established." Id. To show that the right was "clearly established," Crumley must make a particularized showing that the contours of the right were "sufficiently clear that a reasonable [officer] would understand that what he [was] doing violated plaintiff's rights." Anderson, 483 U.S. at 640. Crumley need not show that the "very [act] in question has previously been held unlawful," id., nor can she simply allege the violation of "a broad general proposition," Saucier, 121 S. Ct. at 2156. Instead she must establish that "in light of pre-existing law the unlawfulness [of the officer's actions was] apparent." Anderson, 483 U.S. at 640. "The issue on the merits is whether the officer violated the law when the arrest was made, whereas the immunity question is whether the officer violated clearly established law when the arrest was made." Gainor v. Rogers, 973 F.2d 1379, 1383 (8th Cir. 1992).

If Crumley can show that Bratsch's conduct violated clearly established law, Bratsch "as the movant for summary judgment, must demonstrate that no material issues of fact remain as to whether the defendant's actions were objectively reasonable in light

of the law and the information the defendant possessed at the time of his actions." Cross v. City of Des Moines, 965 F.2d 629, 632 (8th Cir. 1992) (quoting Salmon v. Schwarz, 948 F.2d 1131, 1136 (10th Cir. 1991)). Bratsch is entitled to judgment as a matter of law if there is no genuine issue of material fact regarding the objective reasonableness of the his action. Id. To succeed on a motion for summary judgment, Bratsch need not show that there is only one reasonable conclusion that a jury could reach. The standard to be applied by the Court is whether the he "acted reasonably under settled law in the circumstances, not whether another reasonable, or more reasonable, interpretation of the events can be constructed." Cross, 965 F.2d at 632 (quoting Hunter, 502 U.S. at 228).

The Court begins assessing Bratsch's qualified immunity defense by looking at the excessive force claim. It will then address the unlawful arrest portion of Crumley's claims.

### A. Excessive Force

Crumley contends that Bratsch used excessive force during and after her arrest on September 14, 1998. As discussed above, Crumley is protected by the Fourth Amendment against unreasonable search and seizure. Since Crumley's claim, that Bratsch used excessive force, asserts a constitutional right, the Court must determine whether the challenged use of force was reasonable within the meaning of the Fourth Amendment.

The Court must analyze the excessive force claim in light of the reasonableness

standard articulated in Graham v. Connor, 490 U.S. 386 (1989). Application of the standard requires balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." Tennessee v. Garner, 471 U.S. 1, 8 (1985). The Court must pay "careful attention to the facts and circumstances of each particular case," including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, whether [she] is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396. Reasonableness must be tested from the perspective of a reasonable officer on the scene and must take into account "whether the [officer's] actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 396-97. "If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed." Saucier, 121 S. Ct. at 2159.

"The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." Id. "Because 'police officers are often forced to make split-second judgments--in circumstances that are tense, uncertain, and rapidly evolving--about the amount of force that is necessary in a particular situation,' the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective." Id. at 2158. The Supreme Court has expressly

cautioned against viewing the reasonableness of the officer's actions "against the 20/20 vision of hindsight." Id.

The "Fourth Amendment jurisprudence has long recognized that the right to make an . . . investigatory stop necessarily carries with it the right to use some degree of physical coercion or the threat thereof to effect it." Graham, 490 U.S. at 396. "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Id. "If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed." Saucier, 121 S. Ct. at 2158.

The Court determines that it was objectively reasonable for Bratsch to use the level of force he did in arresting Crumley. Crumley had just approached a traffic stop where neither she nor Bratsch knew if Bland or Armstrong were armed or dangerous. Bratsch, although knowing that Crumley was an attorney, had no idea what she was doing when she handed her business card to Armstrong. He had no way of knowing that she was not also attempting to take something from Armstrong or even hand him a weapon. Further, he had no way of knowing what Armstrong was going to do in response to Crumley's presence at the scene. Bratsch was not required to wait and see what the outcome of Crumley's actions were going to be before impeding her actions. Given his position, it was reasonable for him to conclude that Crumley's actions posed a danger of physical harm to both himself and to Crumley. The Fourth Amendment does not require that

Bratsch forego the use of force until the situation has escalated into violence.

The Court further determines that Bratsch's use of the handcuffs on Crumley was objectively reasonable. Crumley contends that the handcuffs were unnecessary and were applied too tightly around her wrists. "We do not believe that [Crumely's] allegations of pain as a result of being handcuffed, without some evidence of more permanent injury, are sufficient to support [her] claim of excessive force." Foster v. Metropolitan Airports Comm'n, 914 F.2d 1076, 1082 (8th Cir. 1990). Additionally, there was no way for Bratsch to know that he had applied the handcuffs too tightly as Crumley never complained to him about the handcuffs. (Crumley Aff. ¶ 3, p. 5.) Since Bratsch's actions were reasonable, under the circumstances, Bratsch is entitled to qualified immunity and the Court will grant his motion for summary judgment on Crumley's excessive force claim.

**B. Unlawful Arrest**

In Counts 7 and 8, Crumley claims that she was unlawfully arrested and illegally seized. Bratsch contend that he is entitled to qualified immunity on these claims because his actions were objectively reasonable under the circumstances.

An arrest violates the Fourth Amendment when no probable cause exists to believe that an individual is engaged in criminal activity. Brown v. Texas, 443 U.S. 47 (1979). An arrest does not give rise to a cause of action for deprivation of civil rights if it is made with a valid warrant or with probable cause. Pierson v. Ray, 386 U.S. 548 (1967). An

officer's "subjective reason for making [an] arrest is irrelevant to a fourth amendment challenged to the arrest." Foster, 914 F.2d at 1079.

Crumley contends that Bratsch acted in an objectively unreasonable manner by arresting her for obstruction of legal process. Crumley claims that there is no evidence that she violated state law by handing her business card to Armstrong and that she was arrested because Bratsch disliked her. Defendants make a persuasive argument that Crumley's claim is precluded by the findings of the Minnesota state trial court that probable cause to believe a crime was committed did exist in this case. See Johnson v. Morris, 453 N.W.2d 31, 36 (Minn. 1990) (holding that a finding of probable cause to arrest eliminates any cause of action for false arrest or imprisonment); Occhino v. Lannon, 150 F.R.D. 613, 624 (D. Minn. 1993) (holding that a state court finding of probable cause is binding on federal courts for purposes of a § 1983 action). Out of an abundance of caution, however, the Court will analyze Crumley's contention to determine if Bratsch's action were objectively reasonable under the doctrine of qualified immunity.

The state statute which Bratsch accused Crumley of violating provides in part:

> Whoever intentionally does any of the following may be sentenced as provided in subdivision 2:
>
> * * *
>
> (2) Obstructs, resists, or interferes with a peace officer while the officer is engaged in the performance of official duties . . .

Minn. Stat. § 609.50, subd. 2(3).

The Court concludes that a reasonably competent officer possessing the same

information known to Bratsch would have had an objectively reasonable belief that there was probable cause to believe that Crumley had violated Minn. Stat. § 609.50. Bratsch was still engaging in his official duties when Crumley approached Armstrong. The uncontroverted evidence indicates that he was still checking on the warrant information he had received from headquarters and had not released either Bland or Armstrong. Given these facts, it was objectively reasonable for a him to believe that Crumley was interfering with the performance of his official duties when she approached Armstrong. The Court, therefore, grants Defendants' motion for summary judgment on Crumley's unlawful arrest and illegal seizure claims.

## IV. Claims Against the City

In Count 7, Crumley contends that the City failed to properly train and supervise its police force. She further contends that, due to this failure, her constitutional rights were violated as described in more detail above. The City, on the other hand, argues that Crumley is unable to establish that a City policy or custom caused the violation of her rights and is therefore entitled to summary judgment.

A local government entity, like the City, is liable for the conduct of its police officers only if an official policy or custom caused a violation of Crumley's constitutional rights. Monell v. New York Dep't of Social Services, 436 U.S. 658, 690 (1978). To avoid summary judgment, Crumley must produce evidence sufficient to show a municipal policy or custom violated her constitutional rights. "[A] 'policy' is an official policy, a

deliberate choice of a guiding principal or procedure made by the municipal official who has final authority regarding such matters." Mettler v. Whiteledge, 165 F.3d 1197, 1204 (8th Cir. 1999). To show that a custom exists, a plaintiff must establish:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
> (3) Th[e] plaintiff['s] injur[y] by acts pursuant to the governmental entity's custom, *i.e.,* [proof] that the custom was the moving force behind the constitutional violation.

Id. (citations omitted) (alterations in the original).

Crumley does not contend that the City has an "officially recognized policy" to discriminate against African Americans. Instead, Crumley contends, relying on a study by the Institute on Race & Poverty,[4] on Traffic Stop Data ("Traffic Study"), that the City has an established practice of discriminating against African Americans.[5] While the

---

[4] A research center at the University of Minnesota Law School.

[5] Crumley also cites to a web cite (http://www1.umn.edu/irp/zstrates.html) to support her contention that the City has admitted to having an established practice of discriminating against minorities. The Court has viewed this web cite, the Strategic Research and Publications page of the Institute on Race & Poverty's web cite, and can find no documents from the City admitting to an established practice of discriminating against minorities, although a link to the Traffic Study does appear on this web cite.

Crumley also contends that the St. Paul Police Department has acknowledged having an established practice of discriminating against African Americans and has entered into an agreement with the NAACP to address the issue. The record, however, is devoid of any documents supporting this claim. The Court, therefore, finds that Crumley must rely solely on the Traffic Study in support of her contention that the City has an established practice of discriminating against African Americans.

Traffic Study does show that between April 15 and December 15, 2000, the St. Paul Police Department stopped and searched African Americans for traffic violations more frequently than the general population, it is not relevant to the question of whether the city has an established practice of discriminating against African Americans.

First, the study does not cover the time period in which Crumley was arrested. Second, the study applies to traffic stops that do not result in arrests; it does not apply to a situations, such as here, where an arrest was made. As the study is not relevant to the issue at hand and Crumley has not presented any other evidence of a discriminatory custom, she has failed to establish the "existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees." Mettler, 165 F.3d at 1204.

Even if Crumley were able to establish such a persistent pattern of unconstitutional conduct by the St. Paul police, there is no evidence in the record of deliberate indifference or tacit authorization by the City's policymaking official or that Bratsch was acting pursuant to such a custom when he arrested Crumley. The Court will, therefore, grant summary judgment on Crumley's claims against the City.

**V. Section 1985 Claim**

Crumley also alleges that Bratsch and Bohlig conspired to bring false charges against her in violation of 42 U.S.C. § 1985. To survive summary judgment, Crumley must identify specific facts suggesting that there was a mutual understanding among the

conspirators to take action directed towards an unconstitutional end. Haley v. Dormire, 845 F.2d 1488, 1490 (8th Cir. 1988). Crumley has offered no evidence to substantiate her claim. Her subjective beliefs and bare allegations fall well short of demonstrating a conspiracy. Crumley suspects and speculates that Defendants conspired to bring false charges against her, but conjecture is insufficient to withstand a motion for summary judgment. Accordingly, the Court grants Defendants' motion for summary judgment on Crumley's conspiracy claim under § 1985.

## VI. Crumley's State Law Claims

Plaintiff's state law claims are before the Court pursuant to its supplemental jurisdiction. 28 U.S.C. § 1367 ("Except as provided in subsections (b) and (c) . . . in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."); United Mine Workers v. Gibbs, 383 U.S. 715, 725-26 (1966). The district court may, however, decline to exercise supplemental jurisdiction over a claim "if the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367.

> [Supplemental] jurisdiction is a doctrine of discretion, not of plaintiff's right. . . . Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a

jurisdictional sense, the state claims should be dismissed as well.

Gibbs, 383 U.S. at 276. The Court declines to exercise supplemental jurisdiction over Crumley's state law claims because it has dismissed the federal law claims over which it had original jurisdiction. The Court, therefore, dismisses Crumley's state law claims without prejudice.

**Conclusion**

Upon all the files, records, and proceedings herein, and for the reasons stated above, **IT IS ORDERED**:

1. Defendants' Motion for Summary Judgment (Doc. No. 25) is **GRANTED.**

2. Counts 7 and 8 are **DISMISSED WITH PREJUDICE**; and

3. Plaintiff's state law claims, Counts 1-6 and 9, are **DISMISSED WITHOUT PREJUDICE.**[6]

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: December 21, 2001

Richard H. Kyle
United States District Judge.

[6] 28 U.S.C. § 1367(d) provides:
The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information <u>must</u> be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*